## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**RARECOLE L.E. BROWN,**

       **Petitioner,**

      **Case No. 2:15-cv-01374**
  **v.**        **JUDGE ALGENON L. MARBLEY**
        **Magistrate Judge King**

**WARDEN, ROSS CORRECTIONAL
INSTITUTION,**

       **Respondent.**

### REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the *Petition* (ECF No. 1),, Respondent's *Return of Writ* (ECF No. 7), and the exhibits of the parties.  For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On June 1, 2012, Justin Minor was living with a friend in Zanesville, Ohio, whom he knew only by his first name of George. Minor made a living selling drugs, specifically heroin and crack. He knew George from dealing drugs, and had been living with George and a man named "T" for about four days. Justin's brother Samson had lived in the house at one time, and had installed a camera system in the house. Justin paid rent to George in drugs rather than cash.
>
> During the evening of June 1, 2012, Minor was hanging out at the house with George, T, and appellant, who Minor had known for years. Minor was selling drugs, and ran out of heroin. Because no one among the group at the house had a valid driver's license, Minor called a customer named Nick Large to drive appellant to Columbus to get more heroin, as well as some crack cocaine.

Minor sent $2200 with them for two ounces of heroin, and another $200 for crack. Minor stayed at the house with T and George, as well as his girlfriend Keree and a woman named Lisa.

On the camera system, Minor saw appellant return from Columbus. When Minor asked appellant for the crack, appellant would not give him the drugs. Initially the crack was to be split evenly between Nick Large and Minor, but appellant now wanted some of the crack for his trouble in making the trip to Columbus. Minor agreed to give appellant half of his share.

Appellant used a scale in the kitchen to weigh the crack. However, Minor noticed that appellant was taking the larger pieces for himself and giving Minor the crumbs. The two of them argued, and appellant pulled out a gun and shot Minor in the abdomen. Appellant began pacing back and forth, saying, "Look what you made me do." Minor told appellant to get out of there and appellant took off running.

Nick Large called 911 during the early morning hours of June 2, 2012, and reported the incident as a drive-by shooting. Police arrived and found Minor lying on the porch, wounded. Police found a hat and a gun about a block away from the shooting.

Appellant called Minor while Minor was recuperating in the hospital, and again after he was released from the hospital. Appellant asked Minor to "keep it in the streets," and Minor responded that he would "stick to the script."

Police interviewed appellant concerning the shooting. He claimed that he was not in Zanesville on the day of question.

Appellant was charged with attempted murder, felonious assault and having a weapon under a disability. The case proceeded to jury trial in the Muskingum County Common Pleas Court.

At trial, appellant admitted that he traveled to Columbus with Nick Large to pick up drugs for Minor. He testified that he went into the bathroom after returning, and when he came out Minor said, "Where the fuck is my shit?" Tr. 436. Appellant testified that he told Minor he gave it to him, and Minor replied, "No, man, my shit short." Minor accused appellant of stiffing him, and the two argued. Minor then pulled out a gun. When appellant tried to take the gun from Minor, the gun went off. He testified that he lied to police earlier because he was on probation and being around Minor, a convicted felon, would send him back to prison. He also

testified that he lied to police because he never thought Minor would implicate him as the shooter.

Appellant was acquitted of attempted murder, but convicted of felonious assault with the firearm specification and having a weapon under disability. He was sentenced to eight years incarceration for felonious assault, three years incarceration for the firearm specification, and five years incarceration for having a weapon under disability. The five year sentence was to be served concurrently with the eight year sentence, for an aggregate term of eleven years incarceration. Appellant assigns the following errors on appeal:

"I. DEFENDANT–APPELLANT WAS PREJUDICED BY THE INTRODUCTION OF UNRELIABLE AND INADMISSIBLE DNA EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"II. DEFENDANT–APPELLANT WAS PREJUDICED BY THE DENIAL OF HIS RIGHT TO CONFRONT HIS ACCUSER AND TO PRESENT A DEFENSE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"III. DEFENDANT–APPELLANT WAS DENIED A FAIR TRIAL BY PROSECUTORIAL MISCONDUCT CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"IV. DEFENDANT–APPELLANT WAS PREJUDICED BY THE FAILURE OF THE TRIAL COURT TO GIVE PROPER JURY INSTRUCTIONS, WHICH ERROR FORECLOSED HIS DEFENSES OF ACCIDENT AND NECESSITY, AND BY THOSE ATTRIBUTING TO HIM AN AFFIRMATIVE DEFENSE OF SELF–DEFENSE, WHICH HE HAD NOT RAISED, CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"V. DEFENDANT–APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS.

"VI. DEFENDANT–APPELLANT WAS PREJUDICED WHEN HE WAS SENTENCED TO A TERM OF 5 YEARS IMPRISONMENT FOR AN F–3 WEAPONS UNDER DISABILITY (WUD) WHEN AN F–3 WUD CARRIES A MAXIMUM TERM OF ONLY 36 MONTHS UNDER R.C.

> 2929.14(A)(3)(a-b) CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.
>
> "VII. DEFENDANT–APPELLANT WAS PREJUDICED BY CUMULATIVE ERROR CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS."

*State v. Brown,* No. CT2013-0004, 2013 WL 4503303, at *1-2 (Ohio App. 5th Dist. Aug. 20, 2013). On August 20, 2013, the appellate court sustained Petitioner's sixth assignment of error, reversing the judgment of the trial court solely as to Petitioner's five year sentence for his conviction under O.R.C. § 2923.13(A)(3),[1] but otherwise affirmed the judgment of the trial court, and remanded the case for re-sentencing. On January 22, 2014, the Ohio Supreme Court dismissed the appeal. *State v. Brown*, 137 Ohio St.3d 1474 (Ohio 2014).

Petitioner, who is proceeding with the assistance of counsel, filed the *Petition* in this Court on April 22, 2015, He alleges that he was denied the right to confront and defend against the charge of felonious assault, because the trial court prohibited him from cross-examining the alleged victim about his prior statement that he had shot himself accidentally and that Petitioner did not intentionally shoot him. Respondent contends that this claim lacks merit.

**Standard of Review**

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court

---

[1] The state appellate court held:

> [A]ppellant argues that the court erred in sentencing him to five years incarceration for a felony three conviction of having a weapon under a disability, as the maximum term is 36 months pursuant to R.C. 2929.14(A)(3)(a) and (b). The State concedes this error. R.C. 2929.14(A)(3)(a) provides for a maximum term of five years incarceration for certain convictions of third degree felonies; however, a conviction of 2923.13 is not among these offenses. Accordingly, the maximum sentence to which appellant could be sentenced for violating R.C. 2923.13 was 36 months pursuant to R.C. 2929.14(A)(3)(b).
>
> The sixth assignment of error is sustained.

*State v. Brown*, 2013 WL 4503303, at *7.

determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, —— U.S. ——, ——, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

> The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). "Under AEDPA, a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with

the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court

precedent] unreasonable, . . . [t]he state court's application must have been objectively

unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21,

(2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409 and

*Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786

("A state court's determination that a claim lacks merit precludes federal habeas relief so long as

"'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting

*Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable

application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the

reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009)

("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the

ultimate legal conclusion that the state court reached and not whether the state court considered

and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th

Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013)

(considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id.* at 182.

**Merits**

The state appellate court rejected Petitioner's claim as follows:

> [A]ppellant argues that the court erred in excluding a tape recorded statement of Minor in which he conceded appellant's accident defense.

> During Minor's testimony, counsel for appellant asked him:

> "Q. That is more than one. Here's what I'm asking you. Did you tell Mr. Brown, and I quote, I know you didn't do nothing, man?

> "A. I can't recall." Tr. 264.

> Counsel then requested a sidebar conference. At sidebar, he represented to the court that he had a tape recording of a call in which Minor said, "I know you didn't do nothing, man." The court found that Minor's testimony that he didn't recall making the statement was not inconsistent with making the statement, and the tape was inadmissible.

> The admission or exclusion of evidence lies within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Crim. R. 52(A), governing harmless error, states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."

> In the instant case, exclusion of the tape-recorded statement was harmless as it did not affect appellant's substantial rights. Minor testified that when talking to appellant on the telephone, he had agreed to "stick to the script" in an effort to conceal his true intentions with regard to prosecution of the case. The specific statement which counsel represented to be on the tape was not

> materially different from Minor's prior testimony and appellant
> cannot demonstrate that its exclusion affected a substantial right.
> Any error in exclusion of the tape was harmless.

*State v. Brown*, 2013 WL 4503303, at *3.

To the extent that Petitioner raises an issue regarding state evidentiary law, it does not provide a basis for relief. 28 U.S.C. § 2254(a). As a general matter, an error under state law, especially the improper admission of evidence, does not provide a basis for federal habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Giles v. Schotten*, 449 F.3d 698, 704 (6th Cir. 2006). To be entitled to habeas relief, a petitioner must demonstrate that an evidentiary ruling violated more than a state rule of evidence or procedure. "Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). In other words, " '[e]rrors by a state court in the admission of evidence are not cognizable in habeas proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial.' " *Biros v. Bagley*, 422 F.3d 379, 391 (6th Cir. 2006) (citing *Roe v. Baker*, 316 F.3d 557, 567 (6th Cir. 2002)). A state court evidentiary ruling does not violate due process unless it "offend[s] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' " *Giles*, 449 F.3d at 704 (citing *Coleman v. Mitchell*, 268 F.3d 417, 439 (6th Cir. 2001)). Consequently, this Court's review is limited to whether Petitioner can demonstrate a violation of his federal constitutional rights. *Haliym v. Mitchell*, 492 F.3d 680, 700 (6th Cir. 2007).

Petitioner has sought to elevate his claim to a constitutional level by contending that the challenged trial court's evidentiary ruling violated Petitioner's right to present a complete defense as guaranteed by the Sixth Amendment. The Sixth Amendment to the United States

Constitution guarantees criminal defendants the right to physically confront and cross examine adverse witnesses at all stages of the trial. *Illinois v. Allen*, 397 U.S. 337, 388 (1970). The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). This right ensures a defendant's opportunity to present witnesses in his defense. *See Taylor v. Illinois*, 484 U.S. 400, 409 (1988). A criminal defendant's right to cross-examine witnesses who testify against him, however, is not unlimited. "Trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). The Confrontation Clause thus guarantees the opportunity for effective cross-examination, not cross examination in whatever way or to whatever extent a defendant may desire. *Id.* (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985)). *See also Norris v. Schotten*, 146 F.3d 314, 330 (6th Cir. 1998) (no Confrontation Clause violation where relevance of questions prohibited on cross-examination is unclear and the risk of prejudice real) (citations omitted). "The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor,* 484 U.S. at 410; *Rockwell v. Yukins*, 341 F.3d 507 (6th Cir. 2003). The Supreme Court has made it clear that the right to present a "complete" defense is not an unlimited right to ride roughshod over reasonable evidentiary restrictions. *Rockwell,* at 512.

Criminal defendants "must comply with established rules of procedure and evidence designed to assure fairness and reliability in the ascertainment of guilt and innocence." *United States v. Cruse*, 59 Fed. Appx. 72, 79 (6th Cir. 2003)(quoting *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973)). The application of "[s]uch rules do[es] not abridge an accused's right to

present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Cruse,* 59 Fed. Appx. at 79–80.  Whether a decision to exclude certain evidence or preclude questioning about a particular matter violates a criminal defendant's constitutional right to present a defense "turns on the extent to which that evidence is so highly relevant that it becomes indispensable to the success of the defense." *Crane*, 476 U.S. at 691. Against such considerations courts must balance the state's interests in enforcing the evidentiary rule on which the exclusion was based.  The question for the Court to consider is whether Petitioner was afforded 'a meaningful opportunity to present a complete defense.'" *Crane,* 476 U.S. at 690 (quoting *California v. Trombetta,* 467 U.S. 479, 485 (1984)).

As the United States Supreme Court has recognized, "[o]nly rarely have we held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, ——U.S. ——, ——, 133 S.Ct. 1990, 1992 (2013). Cases in which the Supreme Court has declared the exclusion of evidence unconstitutional found that the exclusion "significantly undermined fundamental elements of the defendant's defense." *United States v. Scheffer*, 523 U.S. 303, 317 (1998).

Where a trial court limits the extent of a criminal defendant's cross-examination, but does not bar it completely, the trial court is afforded wider latitude.  *Dorsey v. Parke*, 872 F.2d 163, 167 (6th Cir. 1989).  Under such circumstances, the test is "whether the jury had enough information, despite the limits placed on otherwise permitted cross-examination, to assess the defense theory." *Drummond v. Houk*, 761 F.Supp.2d (N.D.Ohio 2010) (citing *Dorsey v. Parke*)).

At Petitioner's trial, after defense counsel had concluded his cross examination of Minor (and Minor had stated that he could not recall if he had ever made the statement, "I know you didn't do nothing, man"), defense counsel requested a side bar.  *Transcript* (ECF No. 8-2,

PageID# 263-64).  Defense counsel did not indicate that he had any further questions for the witness.  Thus, the record does not establish that the defense was precluded from asking any further questions on cross examination.  Instead, defense counsel sought permission to attack Minor's credibility by introducing a tape recording of the June 14, 2012, telephone conversation from the Zanesville City Jail, during which Minor allegedly made the statement. *Id.* (ECF No. 8-2, PageID# 265).  The trial court denied that request, reasoning that Minor had not denied making the statement.  *Id.* (PageID# 265-66.)  Petitioner claims that the trial court thereby denied him the right to confront the witnesses against him and to present a defense.  This Court disagrees.

As noted by the state appellate court, Minor testified at some length, and was subject to cross examination, regarding his conversations with Petitioner, during which he told Petitioner that he would not testify against him or blame him for the assault.  According to Minor, Petitioner wanted Minor to "clear his name" and Minor agreed to do so by denying that Petitioner had purposely shot him.  Minor also assured Petitioner that he would not testify against him.  *Id.* (PageID# 215-216.)  After Minor had been released from the hospital, he and Petitioner spoke again by cell phone, and Minor again agreed that he would not blame Petitioner for intentionally shooting him.

> Q.  And what was the nature of that conversation?
>
> A.  Basically, the same thing, just that he didn't shoot me.  We didn't go to the basics of the shooting or nothing like that, but it was just, you know, talking, I guess, like a code or something like that.
>
> ***
>
> Q.  And what was the code about?
>
> A.  Just. . . keeping it basically in the streets.

11

\*\*\*

I told him I was going to stick to the script.

Q.  Stick to the script.  And you say that means let's keep this in the streets?

A.  Yeah.

*Id*. (PageID# 218-19).  Minor testified that he did not want Petitioner to know how he planned to handle things.  *Id*. (PageID# 220).  Minor denied ever stating that the shooting had been an accident or that he had shot himself.  *Id*.  Moreover, Minor failed to appear for Petitioner's criminal trial in late August, despite having been subpoenaed to do so.  *Id*.  (PageID# 221).  He explained that he been threatened and was afraid.  *Id.* (PageID# 221-22).  Minor was arrested as a result of his failure to appear, and had remained incarcerated for three weeks awaiting trial proceedings.  *Id*. (PageID# 222).  He acknowledged that his trial testimony differed from various statements that he had previously provided to police regarding the shooting. *Id*. (PageID# 224-25).

As this summary makes clear, the record simply does not establish that Petitioner was prevented by the trial court's evidentiary ruling from presenting his defense.  Minor never denied making the statement referred to by defense counsel.  Further, admission of a tape recorded conversation in which he made such a statement would have added little to the defense in view of the evidence already presented.  Minor admitted that he had spoken with Petitioner on more than one occasion and that he had verbally agreed not to blame Petitioner for the shooting or to pursue criminal charges against him.  In fact, it appears that Minor attempted to keep his word in that regard by initially failing to appear to testify against Petitioner.  Under these circumstances, Petitioner has failed to establish that the state appellate court's rejection of his claim – that he

had been denied the right to confront witnesses against him or present a defense – justifies federal habeas corpus relief.  Petitioner had a meaningful opportunity to present a defense and the Court is not persuaded that such extrinsic evidence would have added to or refuted in any significant manner the testimony already in the record.

Moreover, the exclusion of this proffered evidence was harmless under the strict standard applicable in federal habeas cases.  *See Fleming v. Metrish*, 556 F.3d 520, 536–37 (6th Cir. 2009) (right to present a defense is subject to a harmless error analysis). On federal habeas review, the harmless-error standard requires a court to determine whether the violation "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  Habeas courts must apply this standard regardless of the harmless-error standard applied by the state court – or even if the state court failed to undertake a harmless error review.  *Fry v. Pliler*, 551 U.S. 112, 121–22 (2007).  As discussed *supra*, the record establishes that defense counsel was afforded ample opportunity to cross-examine Minor in order to raise issues regarding the witness' credibility in view of his prior statements denying Petitioner's culpability.  Consequently, the exclusion of a statement purportedly made by Minor during the course of a telephone conversation with Petitioner, to the effect that Minor would not pursue charges against Petitioner or charge Petitioner with intentionally shooting him did not have a substantial and injurious effect or influence on the jury's verdict.  Consequently, Petitioner is not entitled to habeas relief on this basis.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.


    *s/ Norah McCann King*   
Norah McCann King
United States Magistrate Judge
October 27, 2016

14